The next case is Goetz v. The City of Springfield for the appellate, Mr. Baker, and the affilee, Mr. Rahn. You may proceed. Good afternoon. May it please the Court, my name is James Baker. I am appearing this afternoon on behalf of Linda Goetz. The dispute which brings us to this Court involves the interpretation of one sentence in an agreement settling a lawsuit that Ms. Goetz had advanced against the City of Springfield. By way of background, Ms. Goetz was terminated from her employment with the City in March of 2006. She initiated a lawsuit in the Federal Court, and in December of 2010, that lawsuit was settled. Under the terms of the settlement, Ms. Goetz was reinstated to the position she held with the City. She received monetary compensation allocated in various forms, and she was restored benefits. The issue in this case concerns whether, during the time period she was away from work, between March of 2006 and December of 2010, Ms. Goetz accrued sick days and vacation days. And Ms. Goetz's position is that she did accrue them during that time period. The City disagrees. The pertinent provision in the settlement agreement is paragraph 2C3, which is published in the appendix to Ms. Goetz's brief on page A7. It's a one-paragraph subsection that has three sentences. The first sentence indicates that Ms. Goetz was entitled to be restored the accumulated sick leave she had on the books at the time she was terminated. She had previously been paid at the time of her termination for her accrued vacation. The second sentence specified that Ms. Goetz's seniority with the City was April of 1998, which was the day she started her employment with the City, rather than December of 2010 when she returned. And that brings us to the last sentence, which provides that Ms. Goetz would be considered to have worked for the City at all times between March of 2006 and December of 2010 for purposes of particular days as if she had worked for the City. Our position is that the term entitlement, as used in that sentence, means that Ms. Goetz was entitled to the same treatment as if she had actually worked those days, in other words, she would have earned the sick and vacation days covering that time period. Mr. Baker, under the personnel code, are you able to bank those days? You are able to bank sick days. You are able to bank vacation days under a City ordinance, only going back to a time period which covers, as I recall, the preceding year of employment. In other words, from one's anniversary date of employment with the City, say in Ms. Goetz's situation, it was April, she would be use it or lose it. Now, we take issue with Judge Schmidt's decision concerning the use it or lose it policy in three respects. The first respect is that it did not apply to sick days. Those would continue to accumulate. As to vacation days, to the extent that policy applied, Ms. Goetz would still be entitled to vacation days which accrued going back to April of 2009. Finally, the City is governed by the Illinois Wage Payment and Collection Act, and under the rules interpreting that act by the Department of Labor, an employer cannot enforce a use it or lose it policy if it has prevented the employee from reasonably taking those days. Our position is that if they terminated her, they deprived her of that right. Getting back to the agreement itself, it seems like both the City and Ms. Goetz have a fundamental agreement concerning the application of the rules of contract construction here. We agree that the plain reading, plain language of the agreement should control. We agree that you should not read words into the contract that don't appear or read words out of the contract that do appear. It should be read and interpreted in a way so that no provision of the agreement is considered redundant. Finally, it should be read in a way so that it is consistent with other provisions of the agreement. It is our view that applying those rules here, Ms. Goetz would be entitled to those earned days. To begin with, the language in the sentencing question says that Ms. Goetz was entitled to days as if she had worked during that time period. So if we take a step back and Ms. Goetz had not been terminated and had worked between March of 2006 and December of 2010, she would have earned those days and they would have been banked to her. And it is our view that that sentence was merely replicating the situation of Ms. Goetz had not been terminated. The second thing is that to adopt the city's interpretation, which as I understand it, that this sentence would only apply for determining service credit, one has to read language into the agreement which does not appear in its face. It does not say, for example, that for purposes of determining her entitlement to sick and vacation days after she returned to work, she would be considered to have worked. It does not speak to service time. It instead says, and it's quite clear, she was entitled to days as if she had worked. It's not ambiguous, it's very clear and straightforward. What's the first sentence mean then? The first sentence said that... Why do you have to restore that which you haven't lost? Because the last sentence says, from your interpretation, is she never lost those sick days. She's going to be treated as if she earned them. But the first sentence says, restore all accumulated sick days. That only dealt with sick days that were already in there. Not sick days that would have been earned after that. The other point I would like to make is that Ms. Goetz's interpretation of the agreement is not inconsistent. In fact, it's entirely consistent with the agreement as a whole. The agreement was not designed in terms of reinstating her to employment to put her in the same position she would have been in if she had not been terminated. She was restored to the same position. She was entitled to salary and the adjustment of salary like other project managers that held the same position that she had. And she was even entitled to be restored her lost pension benefit. The agreement provides that, by way of background, Ms. Goetz was a participant in the Illinois Municipal Retirement Fund. The agreement provides that she would be entitled to go back and have the city make up the service credit she lost during the time period she was not participating in that. So our position is that the language is clear. The interpretation of that provision that we give is entirely consistent with the agreement as a whole. I have nothing further to add. I would be happy to address any questions the court might have. I don't see any. Thank you. May it please the court. I'm Stephen Rahn. I'm Assistant Corporation Counsel for the City of Springfield, appearing today on behalf of the City of Springfield. The City contends that the settlement agreement was a very specific blueprint for the resolution of Ms. Goetz's employment lawsuit and the terms of her reinstatement. Contrary to her suggestion, it was not intended to make her whole. It was a compromise. And as such, as a compromise, the details of what consideration she received was very specifically set forth in that agreement. The dollar consideration, how that dollar consideration would be allocated between attorney's fees, physical injuries and lost wages, her return date, her job title, her job description, the conditions under which that job description could change in the normal course of the operation of the city, her seniority date, her service time. I put forth in our brief 12 specific considerations that she received upon her return to work. If the parties had intended for her to receive additional time off earned during her time off, they would have specified that. The city's interpretation of Section 2C3 is consistent with the pattern throughout the agreement as a whole. And it's consistent with applicable ordinances. We don't have to construe it around. Now it's very clear she could have received 71 days of vacation time if that had been intended. It would have been specified. Your Honor keyed on the first sentence of that. Gets shall be restored all accumulated sick days which she had at the time of her separation from employment with the city in March of 2006. And sick days she would have earned? Seems logical that it would say that if that was the intent. We think the only way to interpret this language consistent with the pattern expressed throughout the agreement and consistent with ordinances that were in effect at the time is to suggest sentence one, restore her sick time. Sentence two, her seniority April 1998. Sentence three, her service time is the same and continuous. Service time and seniority aren't always the same. They usually are, they aren't always. This made sure they were. All the arguments that Plaintiff's counsel set forth in their brief and in their argument were addressed in my brief and I certainly welcome any questions about those at this time. I don't see anything. Thank you. If one looks at the third sentence of the subparagraph in dispute and just reads the plain language of it, just the common sense of what the King's English says, Mr. Rahn's interpretation cannot stand because you have to add a concept which does not appear in the plain language. The language says for purposes of considering entitlement to sick days. That's what it says. It doesn't say for purposes considering her entitlement to sick days following her return to the city. It does not say for purposes of considering her entitlement to sick days for purposes of service time. It says her entitlement to sick days. If she had worked for that four year period, she would have earned sick days during that time period. That was her entitlement and that's what this paragraph says. Thank you. I wonder though, was she ever sick when she was off work? There is nothing in the record that indicates whether she was or wasn't. You see that looking at it for a practical matter, if she was ill at any time during that four year period, she would have had to earn a sick day. She would have had to use them. Sure. I'm trying to be careful to limit my comments to what's on the record rather than what my experience was, but if one takes a look at the agreement and it's fairly carefully carved out about what the rules of the game are upon her reinstatement to the city. The agreement contains one section dealing with financial compensation and then seven or eight pages dealing with the terms of coming back. It's pretty clear if you read all of that, the whole idea was to put her in the same position she would have been in had this not happened in the first place. In order to do that, you have to give her credit for the sick days and vacation days that accrued during this four year period. Thank you. Thank you. We'll take this matter under advisement and stand in recess until further call.